

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
09/03/2010

| | | |
|---|---|---|
| IN RE: | § | |
| CALTEX HOLDINGS LP | § | CASE NO: 09-31875 |
|    Debtor(s) | § | |
| | § | CHAPTER  7 |
| | § | |
| PASEO PARTNERS, LLC | § | |
|    Plaintiff(s) | § | |
| | § | |
| VS. | § | ADVERSARY NO. 10-3007 |
| | § | |
| NEWSTAR FINANCIAL, INC., *et al* | § | |
|    Defendant(s) | § | |

### MEMORANDUM AND ORDER DENYING MOTION TO DISMISS
### (DOC # 32)

This is a lawsuit removed from state court.  The Plaintiff is Paseo Partners, LLC, a Nevada LLC. ("Paseo").

ALLEGATIONS IN THE AMENDED COMPLAINT

Plaintiff alleges that Dennis Keating II convinced a number of his friends, fellow church members, and financial clients to make an $18 million "investment of a lifetime."[1]  The investors bought interests in Paseo.  Paseo was to enter into a relationship with CalTex to buy 861 acres of land that was formerly a paper mill near Houston, Texas, but the complaint is not entirely clear concerning how the parties initially planned to structure the relationship.  In paragraph 10, the complaint alleges that Keating promised that "the investment in CalTex Holdings, L.P. would be **secured.**"  [Emphasis in original.]  In paragraph 11, the complaint alleges that Paseo was to be a limited partner in CalTex Holdings, LP.  Neither of those actually occurred.  Paseo lent money to Caltex and became an unsecured creditor of CalTex Holdings, LP.  Later Paseo converted its loan to an equity interest.  Paseo alleges that CalTex's secured lender, Newstar, conspired with Keating and influenced Keating to change the deal and that Newstar assisted Keating in cheating Paseo.

Plaintiff alleges that the business plan was for CalTex to purchase the land (including the abandoned buildings and heavy equipment), to demolish the structures on the land, to sell the scrap, and then to develop and to sell the land.  Plaintiff alleges that Keating told the investors that they would get their money back in 3 to 6 months and would eventually receive a return of five to ten times the amount that they had invested.

---

[1] Amended Complaint paragraph 9.

Paseo and Caltex (allegedly both controlled by Keating) were formed about the same time.  Paseo began raising money from its investors in September, 2006.  On September 11, 2006, Paseo paid $1,000,000 directly to a title company as earnest money for the land that Caltex purchased.  Paseo completed selling equity interests and raising money in December, 2006.  CalTex was formed that same month.  On December 18 CalTex gave Paseo an unsecured promissory note for $14.4 million and on December 19 Paseo transferred $11 million to the title company in anticipation of the closing to purchase the land.  On December 29, 2006, Newstar loaned CalTex $20.963 million, secured by a deed of trust on the land and by a security interest in CalTex's other assets, including "all equipment and metals on the property."[2]  $15.12 million of the Newstar loan was used to purchase the land.  There were a number of reserves created from the excess of the total loans over the amount that was used to purchase the land.

CalTex and Paseo entered into a profits agreement in December, 2006.  Under the terms of that agreement, Paseo was entitled to a portion of the profits from the sale of scrap metals.[3]

The Complaint alleges that Keating was effectively in control of both CalTex and Paseo and that Keating lied to the Paseo investors about virtually everything.  The complaint alleges that Newstar, almost from the beginning, brought pressure on Keating and CalTex to improve Newstar's position *vis a vis* Paseo.  Paseo alleges that its investors were mislead by false and misleading statements made as a result of that pressure, but Paseo's allegations of false statements and misrepresentations in 2006 and 2007 are allegedly statements by Keating, not by Newstar representatives.

The Amended Complaint alleges that by August, 2007, Newstar had begun to exercise its rights under its loan documents in a way that gave Newstar effective control over Keating and CalTex.  The Amended Complaint further alleges that Newstar exercised this control to get Keating to persuade Paseo to enter into an Intercreditor and Subordination Agreement with Paseo that would improve Newstar's position *vis a vis* Paseo.  Newstar contends that these allegations fail to state a complaint on which relief can be granted, because Newstar contends that it was in good faith and doing only those things which it had an absolute legal right to do.  Regardless, even assuming that Newstar is incorrect, the Court would be inclined to agree that these allegations fail to state a claim on which relief can be granted because, among other things, the alleged wrongdoing was ineffective prior to 2008.  Paseo rejected Keating's alleged entreaties and Paseo suffered no damages and Newstar obtained no benefit from these alleged actions.

But the Amended Complaint also alleges that at the end of May, 2008, Newstar contacted Paseo directly and demanded that Paseo sign a Intercreditor and Subordination Agreement, asserting that the CalTex assets (Newstar's collateral) was substantially more valuable than the lien against it and that consequently Paseo was safe with a subordinated claim and even an equity interest *in lieu* of an unsecured claim.  Plaintiff asserts that it signed the agreement, and later converted its unsecured claim to an equity interest, based on those allegations.  Plaintiff further

---

[2] Footnote 1 of the Amended Complaint and paragraphs 19 through 22 of the Amended Complaint.  The quoted material is from paragraph 22.

[3] Amended Complaint, paragraph 19.

alleges that its June, 2008, agreement to a second loan amendment was further based on those misrepresentations.

## NEWSTAR'S MOTION TO DISMISS

In document # 32, Newstar asks the Court to dismiss the complaint for failure to state a claim on which relief can be granted.

Paragraph 15 of the Newstar motion sets forth the standards for decision of a motion to dismiss under Rule 12(b)(6). The standard is familiar. The Court must assume that the facts stated in the complaint are true.

Rule 8(a)(2) of the Federal Rule of Civil Procedure (FRCP) requires a complaint to make a "short and plain statement of the claim showing that the pleader is entitled to relief." "[D]etailed factual allegations" are not required, but the Rule does call for sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic v. Twombley,* 550 U.S. 544 at 555, 570 (2007).

In *Iqbal v. Ashcroft*, 129 S.Ct. 1937 (2009), the Supreme Court made it clear that courts should apply a "plausibility" standard. *Iqbal* further explained that in determining whether a complaint states a plausible claim for relief, the reviewing court must " …draw on its judicial experience and common sense." *Id* at 1940. "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id at 1949 – 1950.*

1. The Tortious Interference Claims

Newstar contends that Paseo was a party to, and consented to, the 2008 loan modification and the conversion of its note to equity and thereby consensually modified the two contracts that allegedly are the basis for contractual interference. Newstar cites substantially to those documents. Although the documents are on file as exhibits to the proof of claim that Newstar filed, they are not part of this adversary proceeding record and it is not appropriate to ask the Court to find and to study hundreds of pages of loan documents in connection with a motion to dismiss for failure to state a claim. Newstar's argument may be appropriate after it has filed an answer and when a motion for summary judgment is appropriate, but in a motion to dismiss, under these circumstances, it is not the appropriate method to raise the issue.

Plaintiff alleges that Newstar knowingly and intentionally exercised its contractual rights to improve its position *vis a vis* Plaintiff. Newstar argues at length that its actions under its loan

documents were performed in good faith.[4]  That is a fact issue.  It may be a fact issue on which there is insufficient evidence to justify trial (and therefore appropriate to decide on summary judgment) but it is not an issue for decision on a motion to dismiss for failure to state a claim.

Similar analysis applies to Newstar's argument concerning proof of proximate cause of loss.  Newstar argues that CalTex does not have sufficient assets to pay all of the first priority secured claims, and therefore Paseo can show no loss.  From what the Court knows from numerous hearings in this case, Newstar is probably right.  Again, that might be summary judgment material, but it is not 12(b)(6) material.

2. Breach of Fiduciary Duty Claims

Newstar concedes that under some circumstances allegations of assistance in a breach of fiduciary relationship can state a claim on which relief can be granted.

Newstar argues, persuasively, that any alleged fiduciary duty between Keating and the Paseo investors individually[5] is irrelevant because those investors are not plaintiffs in this adversary proceeding.  Instead, the relevant fiduciary relationship is between Keating and Paseo.

Newstar argues that the allegations fail to state a claim on which relief could be granted because the action of which Paseo complains (*i.e.* the intercreditor agreement, subordination agreement, and conversion of the Paseo unsecured claim to an equity interest in CalTex) occurred after Keating's fiduciary relationship as a controlling party of Paseo ended and that the decision to enter into those transactions was made by independent fiduciaries.

If the evidence supports that argument, then Newstar might prevail.  But the evidence would be appropriately presented in a motion for summary judgment or at trial.

Newstar argues, in addition, that even if there was a fiduciary relationship there is no allegation of conduct that constitutes a breach because (i) Newstar's acts were merely exercise of its contract rights, and (ii) Paseo did not suffer any harm from the transactions which were actually in Paseo's best interests.  Newstar argues, for example, that entering into the agreement was rational and reasonable for Paseo "to " … avoid the total loss that would have likely come from foreclosure."[6]

The Court does not see an admission in the complaint or other evidence that the Court should consider in a 12(b)(6) motion concerning when Keating ceased to be a fiduciary.  Nor does the Court see evidence that it can consider in this motion to dismiss concerning whether any other decision by Paseo would have resulted in "total loss".  Those issues are matters for summary judgment or trial.

---

[4] *See,* for example, paragraph 24 of Newstar's motion:  " … under Texas law, a defendant has privilege to interfere with the plaintiff's contract if the defendant (1) is exercising its own rights in good faith."

[5] The allegations were that Keating went to church with the Paseo investors and was the financial advisor for some.

[6] Newstar motion, paragraph 46.

3. Fraud

The complaint also alleges that Newstar representatives directly and falsely represented to Paseo that Newstar was over secured, *i.e.* that Newstar's collateral was worth more than Newstar's claim. The complaint alleges that Paseo relied on that allegation in changing its position by execution of the intercreditor and subordination agreement and by conversion of its claim to equity in CalTex. Assuming those facts to be true, the complaint states a claim on which relief can be granted.

Newstar argues that Paseo would have lost everything even if it did not execute these agreements. But that is a matter for summary judgment or trial.

Newstar argues that Paseo's reliance on a statement by Newstar could not possibly have been justified. That is also a matter for summary judgment or trial.

## CONCLUSION

In short, the allegations in this complaint just barely exceed this Court's application of the *Iqbal* threshold for plausibility. Therefore, Newstar's motion to dismiss (docket #32) is DENIED.

The Court will address Paseo's motion for withdrawal of the reference (doc #21) by separate order.

SIGNED 09/03/2010.

_____
Wesley W. Steen
United States Bankruptcy Judge